Robert W. Ottinger (SBN 156825)
Katherine Roussos (SBN 358600)
**THE OTTINGER FIRM, P.C.**
2108 N Street, Suite N
Sacramento, CA 95816
Tel: 415-262-0096
Fax: 212-571-0505
robert@ottingerlaw.com
Katherine@ottingerlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORHTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUNBIT CHO,<br><br>Plaintiff,<br><br>vs.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | **PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>**1. SEX DISCRIMINATION (42 U.S.C. § 2000e-2(a))**<br>**2. HOSTILE WORK ENVIRONMENT - HARASSMENT ON THE BASIS OF SEX (42 U.S.C. § 2000e-2(a))**<br>**3. RETALIATION – TITLE VII (42 U.S.C. § 2000e-3(a))**<br>**4. FMLA INTERFERENCE (29 U.S.C. § 2615 et al.)**<br>**5. RETALIATION - FMLA (29 U.S.C. § 2615 et al.)**<br>**6. DISCRIMINATION (Cal. Gov. Code, § 12940)**<br>**6. HOSTILE WORK ENVIRONMENT HARASSMENT ON THE BASIS OF SEX (Cal. Gov. Code §12940(j))**<br>**6. FAILURE TO PREVENT DISCRIMINATION (Cal. Gov. Code § 12940)**<br>**7. RETALIATION (Cal. Gov. Code §  §12940(g))**<br>**8. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, EUNBIT CHO, respectfully submits the instant Complaint for Damages and Demand for Jury Trial and alleges as follows:

**INTRODUCTION**

1. Plaintiff Eunbit Cho ("Plaintiff" or "Ms. Cho) was employed by Meta Platforms, Inc. ("Defendant" or "Meta") as a Strategic Sourcing Manager on May 10, 2021, until her wrongful termination on April 18, 2025.

2. Ms. Cho was subjected to clear discrimination, based on her pregnancy and pregnancy-related medical leave. Then, after she complained about the discrimination, Meta retaliated against her, ultimately terminating her.

3. Ms. Cho was a strong performer at Meta for the first two years she worked there. But after her first pregnancy, in mid-year 2024, she received a review that falsely indicated she was performing "below expectations" and penalized her for not holding a summit that occurred *while she was on leave*. Shortly after announcing her second pregnancy, she was terminated for alleged poor performance. The poor performance cited was clearly pretextual, criticizing her for things like not obtaining manufacturing components for Meta for free, while simultaneously praising her for saving the company over 43 million dollars.

4. Meta has branded Ms. Cho publicly, and thousands like her, as a poor performer. Meta has used this label as a cover for their unlawful and discriminatory employment practices.

**PARTIES**

5. Plaintiff was at all times relevant to this action, until her wrongful termination, an employee of Defendant.

6. While employed by Defendant, Plaintiff resided in Seattle, Washington. She worked both remotely from her home and in the office in Seattle, but also regularly travelled to Defendant's offices in California.

7. Defendant is a business corporation operating a technology company in Menlo Park, California, and at all relevant times met the definition of "employer" under applicable statutes, laws, and regulations.

COMPLAINT

**VENUE AND JURISDICTION**

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

9.     The Court also has diversity jurisdiction under 28 U.S.C. § 1332 because complete diversity of citizenship exists and the amount in controversy meets the minimum threshold. Plaintiff resides in Seattle, WA and Defendant is a corporation headquartered in California. The amount in controversy exceeds $75,000.

10.     The Court has general personal jurisdiction because Defendant's principal place of business is Menlo Park, California.

11.     Venue is proper in the Northern District of California under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3). The special venue provision in Section 2000e-5(f)(3) of Title VII of the Civil Rights Act provides that an action brought pursuant to Title VII "may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed" or " in the judicial district in which the employment records relevant to such practice are maintained and administered." 42 U.S.C. § 2000e-5(f)(3). The unlawful employment practices alleged in this action occurred in California; accordingly, venue is proper in this judicial district.

12.     As a corporate entity with a workforce of over fifteen employees, Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b).

13.     Plaintiff has exhausted her administrative remedies by filing a complaint with the California Civil Rights Department and receiving a right to sue notice. The CRD has a work-sharing agreement with the Equal Employment Opportunity Commission; accordingly, exhaustion with the CRD satisfies all exhaustion requirements. *Surrell v. Cal. Water Service Co.*, 517 F.3d 1097, 1105 (9th Cir. 2008). Out of an abundance of caution, Plaintiff has also filed a charge with the EEOC. Plaintiff will amend this complaint when the EEOC issues a right to sue notice.

**DIVISIONAL ASSIGNMENT**

14.     The events giving rise to this complaint occurred, in part, in San Mateo County, California. Accordingly, pursuant to Rule 3-5(b) of the Civil Local Rules, this case should be assigned to either the San Francisco or Oakland Divisions.

3

**FACTS COMMON TO ALL CAUSES OF ACTION**

15.    Meta hired Ms. Cho on May 10, 2021, as a Strategic Sourcing Manager based out of the Meta Office Located at 1531 Utah Ave S4 in Seattle, Washington 98109.

16.    Ms. Cho worked both remotely from her home and in the Seattle office on a day-to-day basis, but also regularly traveled to Meta's offices in California for work. In 2024 she was in California for work approximately sixteen (16) days for negotiations, executive reviews and in person team meetings. Her performance review in August 2024, which is central to this case, occurred in Sunnyvale, California. Ms. Cho's immediate supervisor John Longhitano, and about 80% of her team were located in California.

17.    Most of Ms. Cho's work in her last year at Meta as a Strategic Sourcing Manager was to negotiate contracts with manufacturers and suppliers of batteries and battery components for Meta's Augmented Reality products.

18.    Meta rates the performance of its employees on a biannual basis, rating the employees on qualities such as their contributions, skills they excel in, and what they can improve.  The reviews also ask peers to provide their thoughts on an employee's skills. The end of year review results in a performance rating, falling into one of six categories: Meets Some Expectations, Meets Most Expectations, Meets All Expectations, Exceeds Expectations, Greatly Exceeds Expectations, and Redefines Expectations. For the mid-year reviews, employees are given a "signal" indicating the status of their performance. Possible signals include "At or Above Expectations" and "Below Expectations."

19.    Prior to Ms. Cho's first pregnancy, she never received a ranking lower than "Exceeds Expectation" from her formal reviews, and for the end of year 2022 rating she received "Greatly Exceeds Expectation." For her 2023 mid-year signal, she was rated "At or Above Expectations." She also received consistently positive reviews from her peers.

20.    In 2024, Ms. Cho began In Vitro Fertilization treatments and suffered complications from the procedure. From March 26, 2024, to April 29, 2025, Ms. Cho took protected medical leave to recover from these complications.

21.    Prior to her medical leave, one of Ms. Cho's primary responsibilities was a project referred to as the Steel Can Summit. This was an internal meeting designed to pitch a type of battery

4

COMPLAINT

component to the decision makers at Meta. Ms. Cho worked on this project for several months, but ultimately the summit was cancelled while she was on her medical leave.

22.    Ms. Cho had confided in her direct supervisor Jon Longhitano about her efforts to become pregnant as early as January 2024. Before going on medical leave in March, she had a meeting with him where she shared her reasons for taking leave and her plan for covering her work. She did not, however, inform her skip level manager Eric Liu about these specifics or that she was trying to become pregnant.

23.    Ms. Cho specifically did not tell her skip level manager Eric Liu about her pregnancy or IVF treatments because she witnessed a previous colleague's discriminatory experience. In 2022, another member of the same team saw her role diminish significantly upon announcing her intention to take maternity leave, and was laid off shortly after returning from leave. That same colleague filed a complaint against her direct supervisor after he told her that working from home was a replacement for parental leave.

24.    In or around April 2024, Ms. Cho became pregnant for the first time after this first round of IVF treatments. Thrilled, she shared the news of her pregnancy early on with Mr. Longhitano.

25.    In mid-May 2024, to her devastation, Ms. Cho lost the pregnancy. In late May 2024, she took one week of bereavement leave for medical recovery and mourning. She informed Mr. Longhitano of the miscarriage and the reason for her leave.

26.    Fewer than ninety days after taking medical leave, on August 4, 2024, Ms. Cho was surprised to receive her first negative performance review, in a meeting which took place in person in Sunnyvale, California. Ms. Cho received a "Meets Most Expectations" rating and was also issued a "Below Expectations" signal. Mr. Longhitano, who wrote the performance review, explained that he was forced to give her a bad performance review by Eric Liu, although he disagreed with the rating.

27.    The written review, dated August 15, 2024, included contradictory statements about her performance. According to the review, Ms. Cho was responsible for $43,320,000 in cost avoidance for Meta. She was also highly praised by her peers, noting her "excellent" partnering with vendors and thorough communication. However, the review from her manager concluded that Meta should not have had to pay anything for the equipment she negotiated for, leading to her negative rating. She was also

5

criticized for her handling of the Steel Can Summit, despite the fact the summit was cancelled while she was on leave, which was out of her control.

28. At the end of the performance review meeting, Ms. Cho learned that her skip level manager, Eric Liu, was aware of her pregnancy and subsequent miscarriage, as he mentioned it in passing to her. She also learned that Mr. Liu had held a meeting about one of her projects while she was on leave, which was unusual. Due to the unfair performance review and Mr. Liu's actions while she was on leave, she started to believe she was being discriminated against for her pregnancy. Ms. Cho contested the low performance score.

29. Despite the low score in her recent review, on September 6, 2024, Ms. Cho was selected by her manager to receive a High Five award for Power, Interconnect and Accessories. Mr. Longhitano specifically selected Ms. Cho from among all his direct reports for her work on the Steel Can project and her negotiations—the same work she was penalized for in her mid-year review just a month prior to receiving the award.

30. In the period following her mid-year review, Mr. Longhitano assigned Ms. Cho more and more work, transferring projects to her from other employees and assigning additional programs to her already substantial workload. Mr. Longhitano said taking on this extra workload could "turn around" her poor review. Conversely, Ms. Cho believed she was being set up to fail.

31. Sometime in October 2024, Ms. Cho informed Mr. Longhitano that she needed to take further medical leave, but he warned her not to do so, saying that the company looked poorly on people who "abused" medical leave. Although Ms. Cho kept working through her health problems due to fear of retaliation, despite having documentation from her doctor stating she should take time off work.

32. On December 9, 2024, Ms. Cho's manager, Mr. Longhitano, stated that her negative performance evaluation earlier in the year was not regarding her results, but her "attitude.'"

33. In January 2025, Ms. Cho successfully became pregnant again through continued IVF treatments.

34. On January 13, 2025, Ms. Cho informed Defendants of her pregnancy.

35. After her pregnancy announcement, Ms. Cho had a conversation with Mr. Longhitano for more support within her team, as she was being overloaded with assignments. Rather than provide

6

COMPLAINT

support in her current role, Mr. Longhitano stated that she should move to the Virtual Reality team within Meta since she would soon have a child and would have less time. In prior conversations Mr. Longhitano had told her the Virtual Reality team was less important to Meta and vulnerable to layoffs.

36.    On January 16, 2025, Ms. Cho attended a prenatal doctor's appointment.  Her doctor noted Ms. Cho's recent depression and anxiety due to work, and recommended time off.  Ms. Cho had no previous issues with anxiety and depression.

37.    On January 24, 2025, Ms. Cho made a protected complaint, in an email, to Meta's Employee Relations Department stating that she believed that she was being discriminated against for her pregnancy and retaliated against subsequent to taking protected medical leave.

38.    On January 27, 2025, Ms. Cho started medical leave for depression and stress, as it impacted her pregnancy. Her doctor also recommended that she continue to utilize therapy every one to two weeks.

39.    In January 2025, CEO Mark Zuckerberg made a public statement about the Company's layoffs, stating that he had "decided to raise the bar on performance management and move out low performers faster."

40.    On February 10, 2025, Meta notified Ms. Cho that her employment was terminated due to alleged poor performance.  She was never issued an end of year performance review for 2024, and Meta never addressed her performance for the second half of the year. Ms. Cho was given a "notice period" pursuant to the WARN act and her official termination date was April 18, 2025.

41.    Due to Mr. Zuckerberg's statements, Ms. Cho has effectively been labeled a "low performer" and has been unable to find alternative employment in the months since she was notified that she was terminated. Meta's actions lead Ms. Cho to suffer a double blow to her career; both being terminated and being publicly labeled a poor performer.

42.    On April 29, 2025, Ms. Cho requested and received a Right to Sue letter from the Civil Rights Department.

**FIRST CAUSE OF ACTION**
**Sex Discrimination – Title VII**
42 U.S.C. § 2000e-2(a)

43.    Plaintiff re-alleges and incorporates by reference all previous paragraphs as if fully set

7

COMPLAINT

forth herein.

40.    Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees based on sex. 42 U.S.C. § 2000e-2(a). Discrimination on the basis of sex includes discrimination based on pregnancy, childbirth and related medical conditions. 42 U.S.C. § 2000e(k).

41.    Defendant discriminated against Plaintiff due to her multiple pregnancies. Plaintiff was given unjustified negative performance reviews and pressured with an unsustainable amount of work by Defendant in the months following her announcement of her first pregnancy. She was then terminated by Defendant less than a month after she announced her second pregnancy and went on medical leave due to complications. Also, she was specifically told by her manager that because she was having children she should be working in a less prestigious area of the company.

42.    Plaintiff has exhausted her administrative remedies.

43.    The unlawful and discriminatory conduct was perpetrated or ratified by a managing agent of Defendant.  Defendants' actions were perpetrated with malice and/or reckless indifference. 42 U.S.C. § 1981a(b)(1). As such, Plaintiff seeks punitive damages from Defendants in an amount according to proof.

44.    As a proximate result of these stated violations, Plaintiff has suffered both economic and emotional damage in an amount according to proof.

## SECOND CAUSE OF ACTION
*Hostile Workplace Harassment on the Basis of Sex – Title VII*
42 U.S.C. § 2000e-2(a)

45.    All factual allegations of this complaint are hereby re-alleged and incorporated for reference.

46.    Harassment on the basis of sex is prohibited under Title VII of the Civil Rights Act of 1964 as a form of discrimination. 42 U.S.C. § 2000e-2(a). *See also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). A hostile work environment constitutes harassment where the employer's conduct has the "effect of unreasonably interfering with an individual's work performance or creating an intimidating hostile, or offensive working environment." 29 CFR § 1604.11(a)(3).

47.    Defendant created a hostile work environment for Plaintiff on the basis of sex, i.e. her status as a pregnant woman through the following actions: (1) giving her unwarranted negative

8

COMPLAINT

performance reviews for the first time following her announcement she was pregnant; (2) pressuring her not to take medical leave for pregnancy related issues; (3) telling her that she should go work in a less prestigious area of the company because she was going to have children; (4) giving her a unmanageable amount of work and refusing to provide managerial support.

48.     These actions by Defendant interfered with Plaintiff's performance by creating an environment where she felt she could not succeed because she was pregnant and/or trying to become pregnant. She believed her negative performance review, which eventually lead to her termination, was directly related to her first pregnancy and the leave she took related to it. She developed anxiety and depression due to her treatment at work. The anxiety and depression lead to complications with her pregnancy, causing her to require medical leave.

49.     Plaintiff has exhausted her administrative remedies.

50.     The unlawful and discriminatory conduct was perpetrated or ratified by a managing agent of Defendant.  Defendants' actions were perpetrated with malice and/or reckless indifference. 42 U.S.C. § 1981a(b)(1). As such, Plaintiff seeks punitive damages from Defendants in an amount according to proof.

51.     As a proximate result of these stated violations, Plaintiff has suffered both economic and emotional damage in an amount according to proof.

## THIRD CAUSE OF ACTION
### Retaliation – Title VII
42 U.S.C. § 2000e-3(a)

52.     All factual allegations of this complaint are hereby re-alleged and incorporated for reference.

53.     Title VII of the Civil Rights Act of 1964 prohibits retaliation by employers against employee who oppose employment practices made illegal by Title VII. 42 USC § 2000e-3(a).

54.     On January 24, 2025, Plaintiff opposed Defendant's acts of pregnancy discrimination when she reported to the Employee Relations department in an email that she believed she was being discriminated against due to her pregnancy. On February 10, 2025, Defendant informed Plaintiff she was terminated for "poor performance," an assessment which Plaintiff had reported was a result of the discrimination, less than one month after she reported the violation.

COMPLAINT

55.    Plaintiff has exhausted her administrative remedies and is therefore able to bring her claims for discrimination in a civil action.

56.    As a proximate result of these stated violations, Plaintiff has suffered both economic and emotional damage in an amount according to proof.

**FOURTH CAUSE OF ACTION**
*FMLA Interference*
29 U.S.C. § 2615 et al.

57.    All factual allegations of this complaint are hereby re-alleged and incorporated for reference.

58.    FMLA prohibits any covered employer from interfering with, restraining, or denying the exercise of or the attempt to exercise an eligible employee's right to FMLA leave. An employer violates FMLA if it interferes with, restrains, or denies an employee's exercise or attempt to exercise those rights, retaliates, or discriminates against an employee for participating in FMLA proceedings. 29 U.S.C. §2615(a).

59.    Defendant explicitly violated FMLA by retaliating against Plaintiff in terminating her employment upon her exercise of her rights under the FMLA by taking a leave of absence related to a serious medical condition.

60.    As a proximate result of these state violations, Plaintiff has suffered both economic and emotional damages in an amount according to proof.

**FIFTH CAUSE OF ACTION**
*Retaliation - FMLA*
29 U.S.C. § 2615 et al.

61.    All factual allegations of this complaint are hereby re-alleged and incorporated for reference.

62.    FMLA prohibits any covered employer from interfering with, restraining, or denying the exercise of or the attempt to exercise an eligible employee's right to FMLA leave. An employer violates FMLA if it interferes with, restrains, or denies an employee's exercise or attempt to exercise those rights, retaliates, or discriminates against an employee for participating in FMLA proceedings. 29 U.S.C. §2615(a).

10

COMPLAINT

63. Defendant explicitly violated FMLA by retaliating against Plaintiff for making a protected complaint of an interference of her rights under the FMLA and terminating Plaintiff's employment because of her protected complaint.

64. As a proximate result of these violations, Plaintiff has suffered both economic and emotional damages in an amount according to proof.

**SIXTH CAUSE OF ACTION**
*Hostile Work Environment Harassment on the Basis of Sex - FEHA*
California Government Code §12940(j)

63. All factual allegations of this complaint are hereby re-alleged and incorporated for reference.

64. Harassment on the basis of sex is prohibited under the Fair Employment and Housing Act (FEHA). Cal. Gov. Code § 12940(j). A broad range of conduct can constitute harassment on the basis of sex. *Lyle v. Warner Brothers Television Productions*, 38 Cal.4th 264, 277 (2006). A hostile or abusive work environment based on sex or gender "need not allege any sexual advances whatsoever." *Mogilefsky v. Superior Court*, 20 Cal.App.4th 1409, 1414-1415 (1993). *See also Lyle v. Warner Brothers Television Productions* 38 Cal.4th 264, 277 (2006).

65. Defendant created a hostile work environment for Plaintiff on the basis of sex, i.e. her status as a pregnant woman through the following actions: (1) giving her unwarranted negative performance reviews for the first time following her announcement she was pregnant; (2) pressuring her not to take medical leave for pregnancy related issues; (3) telling her that she should go work in a less prestigious area of the company because she was going to have children; (4) giving her a unmanageable amount of work and refusing to provide managerial support.

66. The harassment was directed from Defendant's offices in Sunnyvale, California, where Plaintiff's direct supervisor and most of her team were located. Plaintiff received the negative performance review onsite in Sunnyvale, California. The harassment was ratified by California-based supervisors. Thus, the tortious conduct occurred within California and the FEHA applies to Plaintiff's claims.

67. These actions by Defendant interfered with Plaintiff's performance by creating an

11

COMPLAINT

environment where she felt she could not succeed because she was pregnant and/or trying to become pregnant. She believed her negative performance review, which eventually lead to her termination, was directly related to her first pregnancy and the leave she took related to it. She developed anxiety and depression due to her treatment at work. The anxiety and depression lead to complications with her pregnancy, causing her to have to take medical leave, because these conditions caused complications for her pregnancy.

68.    Plaintiff has exhausted her administrative remedies.

70.    The harassing conduct was perpetrated or ratified by a managing agent of Defendant. Defendants' actions were perpetrated with malice, oppression, and/or fraud.  As such, Plaintiff seeks punitive damages from Defendants in an amount according to proof.

78.    As a proximate result of these stated violations, Plaintiff has suffered both economic and emotional damage in an amount according to proof. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by California Government Code §12926(a).

## SEVENTH CAUSE OF ACTION
### *Sex Discrimination - FEHA*
California Government Code §12940(a)

71.    All factual allegations of this complaint are hereby re-alleged and incorporated for reference.

72.    At all times material to this Complaint, the Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq., was in effect and binding on Defendant.

73.    Under the FEHA it is illegal for employers to discriminate against employees based on their sex. Cal. Gov. Code §12940(a). Under California Government Code §12926(p), discrimination based on sex can refer to an employee's gender including, but not limited to, pregnancy, childbirth or medical conditions related to pregnancy or childbirth.

74.    Defendant discriminated against Plaintiff  due to her multiple pregnancies. Plaintiff was given unjustified negative performance reviews and pressured with an unsustainable amount of work by Defendant in the months following her announcement of her first pregnancy. She was then terminated by Defendant less than a month after she announced her second pregnancy and went on medical leave due to complications. Also, she was specifically told by her manager that because she

12

COMPLAINT

was having children she should be working in a less prestigious area of the company.

75.    The discrimination was directed from Defendant's offices in Sunnyvale, California, where Plaintiff's direct supervisor and most of her team were located. Plaintiff received the negative performance review onsite in Sunnyvale, California. The discriminatory conduct was ratified by California-based supervisors. Thus, the tortious conduct occurred within California and the FEHA applies to Plaintiff's claims.

76.    Plaintiff has exhausted her administrative remedies and is therefore able to bring her claims for discrimination in a civil action.

77.    The unlawful and discriminatory conduct was perpetrated or ratified by a managing agent of Defendant.  Defendant's actions were perpetrated with malice, oppression, and/or fraud.  As such, Plaintiff seeks punitive damages from Defendants in an amount according to proof.

78.    As a proximate result of these stated violations, Plaintiff has suffered both economic and emotional damage in an amount according to proof. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by California Government Code §12926(a).

### EIGHTH CAUSE OF ACTION
*Failure to Prevent Discrimination - FEHA*
California Government Code §12940(k)

79.    All factual allegations of this complaint are hereby re-alleged and incorporated for reference.

80.    At all times material to this Complaint, the Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq., was in effect and binding on Defendant.

81.    Under FEHA, codified under California Government Code §12940(k), it is unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination from occurring within the workplace.

82.    For years Plaintiff received "Exceeds Expectations" results on her mid and full year performance reviews.  However, once Plaintiff announced her pregnancy, she was criticized by her California-based supervisors for things out of her control, and her performance reviews plummeted. Plaintiff even attempted to address the discrimination with Defendant's Employee Relations Business Partner who, to her knowledge, took no actions to investigate her claims.  Defendant did not take

13

COMPLAINT

reasonable steps to prevent discrimination, and ultimately fired her, using her discriminatory performance reviews as a pretext.

83. The unlawful and discriminatory conduct was directed at Plaintiff from Defendant's offices in Sunnyvale, California, where Plaintiff's direct supervisor and most of her team were located. Plaintiff received the negative performance review onsite in Sunnyvale, California. The discriminatory conduct was ratified by California supervisors. Thus, the tortious conduct occurred within California and the FEHA applies to Plaintiff's claims.

84. The unlawful and discriminatory conduct was perpetrated or ratified by a managing agent of Defendant. Defendants' actions were perpetrated with malice, oppression, and/or fraud. As such, Plaintiff seeks punitive damages from Defendants in an amount according to proof.

85. Plaintiff has exhausted her administrative remedies and is therefore able to bring her claims for discrimination in a civil action.

86. The unlawful and discriminatory conduct was perpetrated or ratified by a managing agent of Defendant. Defendants' actions were perpetrated with malice, oppression, and/or fraud. As such, Plaintiff seeks punitive damages from Defendants in an amount according to proof.

87. As a proximate result of these stated violations, Plaintiff has suffered both economic and emotional damage in an amount according to proof. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by California Government Code §12926(a).

### NINTH CAUSE OF ACTION
*Retaliation – FEHA*
California Government Code §12940(g)

88. All factual allegations of this complaint are hereby re-alleged and incorporated for reference.

89. At all times material to this Complaint, the Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq., was in effect and binding on Defendant.

90. Under the FEHA it is illegal for an employer to retaliate against employees who engage in protected activity, including reporting violations of FEHA to their employer. Cal. Gov. Code §12940(g).

91. Plaintiff engaged in protected activity on January 24, 2025 when she reported to the

14

COMPLAINT

Employee Relations department in an email that she believed she was being discriminated against due to her pregnancy. On February 10, 2025, Defendant informed Plaintiff she was terminated for "poor performance," an assessment which Plaintiff had pointed to as part a result of the discrimination, less than one month after she reported the violation.

92. The unlawful retaliation was directed at Plaintiff from Defendant's offices in Sunnyvale, California, where Plaintiff's direct supervisor and most of her team were located. Plaintiff received the negative performance review onsite in Sunnyvale, California. The retaliation was ratified by California supervisors. Thus, the tortious conduct occurred within California and the FEHA applies to Plaintiff's claims.

93. Plaintiff has exhausted her administrative remedies and is therefore able to bring her claims for discrimination in a civil action.

94. As a proximate result of these stated violations, Plaintiff has suffered both economic and emotional damage in an amount according to proof. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by California Government Code §12926(a).

**TENTH CAUSE OF ACTION**
*Wrongful Discharge in Violation of Public Policy*

95. All factual allegations of this complaint are hereby re-alleged and incorporated for reference.

96. At all times material to this Complaint Plaintiff was an employee of Defendant, until April 18, 2025 when she was wrongfully discharged in violation of public policy.

97. Where an employer terminates an employee for illegitimate reasons in violation of established public policy, the employee can maintain a common law claim for wrongful termination, even where the employment is at-will. *Tameny v. Atlantic Richfield Co.* 27 Cal. 3d 167, 172 (1980). *Silo v. CHW Med. Found* 27 Cal. 4th 1097, 1104 (2002).

98. At all times material to this Complaint, Title VII of the Civil Rights Act of 1964 (Title VII) and the Fair Employment and Housing Act (FEHA) were in effect and binding on Defendant. Under both Title VII and FEHA it is unlawful for an employer to discriminate against an employee due to their sex or pregnancy, including by termination of employment.

15

COMPLAINT

99. The protections afforded to employees under Title VII and FEHA to be free from discrimination and retaliation are long-standing public policies.

100. As laid out in detail above, Defendant terminated Plaintiff in violation of Title VII and FEHA.

101. As a direct, foreseeable, and proximate result of Defendant's wrongful actions, Plaintiff has suffered and continues to suffer economic damages that include, without limitation, loss of wages, salary, benefits and/or additional amounts of money she would have received but for Defendant's actions as alleged herein, in amounts subject to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgement against Defendant as follows:

A. An award for actual and compensatory damages, including lost wages, earnings, employee benefits, liquidated damages, and all other sums of money together with the interest on these amounts and according to proof;

B. For General, special, and incidental damages according to proof;

C. For punitive damages;

D. For civil penalties according to proof;

E. Pre-judgment and post-judgement interest, as provided by law;

F. Attorneys' fees and costs under applicable law, including expert fees and costs; and

G. Such additional and further relief as this form may deem just and proper.

Dated: October 3, 2025

Respectfully submitted,

**THE OTTINGER FIRM, P.C.**

*Katherine Roussos*

Katherine Roussos
*Attorneys for Plaintiff*

16

COMPLAINT